# ELLA ZIMMERMANN AND ANOTHER v. GEORGE G. BENZ AND OTHERS.[1]

February 6, 1925.

No. 24,167.

**Question of defect of parties not raised by general demurrer.**
A general demurrer does not raise the question of defect of parties plaintiff or defendant.

**Complaint did not state cause of action based on duress.**
2. The complaint examined and *held* not to state a cause of action based upon duress exercised by defendants by means of which plaintiffs were caused to make a sale of certain shares of stock to defendants.

Action in the district court for Ramsey county to recover $35,000. From an order, Boerner, J., sustaining defendants' demurrer to the amended complaint, plaintiffs appealed. Affirmed.

*Thomas Kneeland* and *John F. Bernhagen,* for appellants.

*D. E. Dwyer* and *Linus O'Malley,* for respondents.

HOLT, J.

The appeal is from an order sustaining a general demurrer to the complaint.

The pleading is long and cannot well be set out in extenso. The action is to recover damages on account of a sale by plaintiff to defendants Benz of 47 shares of stock in the defendant corporation on the ground that defendants conspired to and did bring it about by duress. The more important allegations are these:

The defendant corporation was formed in 1899 by Emil Zimmermann and the two defendants Benz, the former owning 47 shares of stock and the latter 94, of the par value of $100 a share. The three were the only stockholders and held the shares mentioned when Zimmermann died testate, July 8, 1918. The executor resigned and the plaintiff Ella Zimmermann was appointed admini-

[1]Reported in 202 N. W. 272.

stratrix d. b. n. c. t. a. She sues as representative of the estate and individually as one of the two sole devisees. The other is the daughter, also a party plaintiff. One of the individual defendants filed a claim of about $2,000 against the estate, and the defendant corporation a claim of about $14,000. These were duly allowed by the probate court in April, 1919. They were not paid, and defendants procured and had served by the sheriff on the administratrix an order from the probate court requiring her to show cause why the claims should not be paid. The administratrix was given first three months but failed to pay, and again the same proceeding was gone through and she was given 60 days. Before she was to answer a third citation, the sale of the 47 shares was made to defendants in April, 1920, for $30,000, but on condition that the claim of the company should be paid therefrom, which was done. The individual claim of Benz was paid a few months prior. At the time, the shares of stock are stated to have been of the value of $65,000. The facts pleaded tending to show duress are that since the husband's and father's death plaintiffs were in an abnormal and depressed mental state, afflicted with physical ailments, inexperienced in business relating to stocks of corporations, and unfit to negotiate for the sale of said shares of stock or devise any means to obtain funds to liquidate the claim of the company so as to save the total sacrifice of said shares from a sale upon execution as defendants threatened; that, shortly after plaintiffs' interest in the 47 shares accrued, defendants to force a sale thereof to them began to treat plaintiffs in a cold and implacable manner, refused to inform them of the company's business, declared no dividends after the death of Zimmermann, and in harsh and insulting language threatened plaintiffs that "if and while they continued to be stockholders in said company, the defendants would not permit them to participate in the management or transaction of the business of said company, and that the defendants would not in any way deal or associate with them therein; that said defendants would conduct the whole business of said company and utilize its earnings without reference to the interests of plaintiffs therein, and would not permit any of the earnings or surplus thereof to be used in the declaration or payment

of dividends, nor cause to be declared or paid any dividends on the said stock of plaintiffs, and that the same would be rendered and become and be worthless in their hands." The procuring to be issued the citations mentioned from the probate court and their service by the sheriff are alleged to have been for the purpose of frightening and intimidating plaintiffs to dispose of the shares of stock upon the inadequate price offered by defendants, and it is stated that they threatened to issue execution and levy and sell the stock of plaintiffs at great sacrifice, although plaintiffs offered to apply all assets remaining in the estate upon the claims and then letting the balance unpaid be paid out of dividends accruing thereafter on the 47 shares of stock, but defendants refused to make any other settlement of the claims except to purchase on the terms stated. It is also alleged that plaintiffs believed that defendants would and could carry out their threats that the shares of stock would be rendered wholly worthless or lost to plaintiffs and were thereby coerced to make the said sale.

Some contention is made by respondents of defect of parties plaintiff. That is not made a ground of the demurrer and cannot be considered. Moreover, the administratrix, who must have made the sale in her representative capacity, has certainly such an interest in the sale as would entitle her to seek redress if it was procured by duress. In addition, the only individual defendants interested in the estate and its assets are parties plaintiff. So defendants are fully protected by the judgment in this action.

No particular attention need be given the charge of conspiracy, for it is plain that there is nothing unlawful in the endeavor to purchase property at as small a price as possible, and it is not alleged that the means employed in attaining that purpose were fraudulent or unlawful in any other respect than as there was duress. The facts alleged to constitute duress should not be considered separately, and by elimination be put out of the case. The pleader no doubt intended that all collectively go to make up the charge of duress. And so they must be looked upon as if the several acts are aimed at producing coercion. In that view the mental

and physical condition of plaintiffs should be taken into account. For the rule, well stated in the syllabus in Galusha v. Sherman, 105 Wis. 263, 81 N. W. 495, 47 L. R. A. 417, is this: "The question, in each case is, was the person so acted upon by threats of the person claiming the benefit of the contract, for the purposes of obtaining such contract, as to be bereft of the quality of mind essential to the making of a contract, and was the contract thereby obtained?" It is not how would a person of ordinary firmness and courage be affected by the threats, but how was the particular person induced to contract affected. "And in any case a factor to be considered is the mental capacity and condition at the time being of the alleged victim." Brown County Bank v. Hage, 156 Minn. 460, 195 N. W. 275; Anthony & Cowell Co. v. Brown, 214 Mass. 439, 101 N. E. 1056.

But taking plaintiffs' condition and situation as alleged in connection with the averments of the acts constituting the claimed coercion, we do not think the complaint states a cause of action. Defendants held lawful claims against the estate of Zimmermann. The steps taken in the probate court were proper, and such as the law sanctions. The pleading in that regard, instead of disclosing coercion and harsh treatment, indicates that the creditors exercised consideration and patience. Here were shares of stock greatly exceeding in value the only two unpaid claims against the estate. Several months elapsed after the claims were allowed. They were not paid, and the complaint does not suggest that the administratrix made any effort to dispose of these shares of stock to others even after the citations were served upon her. If she was as unfit to do business as alleged, she surely had an attorney attending the administration of the estate in the probate court and who no doubt informed her both of her rights and duties. More than a year passed after the claims were allowed until the last one was paid through this sale. There was no hasty advantage taken of plaintiffs' necessities nor does the pleading show plaintiffs to have been hurried into making the sale. For aught that appears the negotiation for the purchase had gone on for months. Where there has been time for deliberation and opportunity for full consultation with

others, duress is negatived. Wolff v. Bluhm, 95 Wis. 257, 70 N. W. 73, 60 Am. St. 115; Rochester M. T. Works v. Weiss, 108 Wis. 545, 84 N. W. 866. The allegations of cold treatment and refusal to let plaintiffs participate in the business of the corporation are of little importance, for plaintiffs were not its officers or agents and had no right to take part in the conduct of its business. There is no averment that they were denied the rights of stockholders, or denied access to the books of the company. The only facts which savor of duress are to be found in that part of the complaint hereinbefore inclosed in quotation marks, the substance of which is the threat to withhold dividends and to destroy the value of plaintiffs' shares of stock. There are no allegations going to show that if plaintiffs, as minority share holders, were entitled to have dividends declared they could not get adequate redress in court. And it is difficult to see how plaintiffs could be led to believe that defendants' threat to destroy the value of the stock was more than vain words. Self interest would forbid the threat to be carried out. Plaintiffs' shares could not be depreciated without in like manner affecting defendants'.

It is alleged that defendants threatened to levy execution upon the shares, but they had waited patiently for a year to have a valid claim paid, and were within their rights in taking the step the law provides for enforcing just claims. If payments made upon executions are under duress, then no creditor can safely receive payments in that manner, for the money would have to be returned whenever the debtor elected to come into court charging coercion. There is nothing in the complaint disclosing that the so-called threat to enforce this claim was made under such circumstances that it could be said to be an abuse of lawful means within the meaning of the language of Justice Stone in Brown County Bank v. Hage, 156 Minn. 460, 195 N. W. 275. Moreover, the threats referred to are charged in general terms without specifying the time or circumstances under which they were made. The claim sought to be enforced here was an admittedly valid claim, against property of an estate owing the same and thus distinguished from the claim in Joannin v. Ogilvie, 49 Minn. 564, 52 N. W. 217, 16 L. R. A. 376, 32 Am.

St. 581. Nor can the facts pleaded bring the case within the class referred to in DeGraff v. County of Ramsey, 46 Minn. 319, 48 N. W. 1135, in these words: "There is a class of cases where, although there be a legal remedy, [a person's] situation or the situation of his property is such that the legal remedy would not be adequate to protect him from irreparable prejudice—where the circumstances and the necessity to protect himself or his property otherwise than by resort to the legal remedy may operate as a stress or coercion upon him to comply with the illegal demand." Here plaintiffs had, of course, no remedy against the enforcement of valid legal demand. Defendants had the right to have it satisfied out of these shares, there being no other assets in the estate, so there was no duress in the threat to levy upon the shares. It is not alleged how or when this threat was used to bring about the sale out of which the claim was paid; or that the sale was made hurriedly; or that when made stress of circumstances forced an involuntary consent from plaintiffs.

The pleading does not indicate nearly as strong compulsion as the one held insufficient in Minneapolis Land Co. v. McMillan, 79 Minn. 287, 82 N. W. 591. The facts here are not like those where relatives or friends are coerced by the threatened arrest of one whom they are frantic to have at liberty, nor where one by duress pays or obligates himself to pay the claim of another. In Kraemer v. Deustermann, 37 Minn. 469, 35 N. W. 276, which was a suit to recover back money paid under duress (here to recover damages because of the sale at inadequate price made under coercion), the court said [at page 472]: "But as respects the charge of duress, in order to entitle a party to recover back money paid under a claim that it was a forced or compulsory payment, it must appear [from the complaint] that it was paid upon a wrongful claim or unjust demand, under the pressure of actual or threatened * * * seizure or interference with his property of serious import to him; and that he could escape from or prevent the injury only by making such payment." As bearing upon the question of duress may be cited American Nat. Bank of Lake Crystal v. Helling, 161 Minn. 504, 202 N. W. 20. The certificates of the shares in question were not un-

der the control of defendants prior to the sale, so there was no immediate danger of loss of property. In the cases where duress has been exerted through fear of loss or injury to property the wrong doer has usually had the property in his possession or control. The case of Harris v. Cary, 112 Va. 362, 71 S. E. 551, Ann. Cas. 1913A, 1350, cited by plaintiffs is not similar on the facts. The basis of the duress there was an unlawful claim, and the one guilty of the wrong had the property of the other within his control. No certificates of stock had there been issued to the shares to which the party subjected to the coercion was rightfully entitled.

We do not think the facts pleaded make out a case of duress.

Order affirmed.

STONE, J. (dissenting.)

While it must be confessed that the effort to charge duress is somewhat feeble, yet in my opinion there are averments which make the complaint good as against the demurrer. There is a very plain allegation, quoted by Mr. Justice Holt, of a threat by defendants so to conduct the company's business and so to utilize its earnings as to deprive plaintiffs of dividends and render their stock worthless. Under the other circumstances of plaintiff, referred to in the opinion (which were very different from those of the defendants in American Nat. Bank of Lake Crystal, 161 Minn. 504, 202 N. W. 20, these allegations, in my judgment, should be taken as sufficient to present an issue as to whether the will of plaintiffs was actually overcome and supplanted by that of defendants in a manner constiting duress. In the event of the attempted carrying out of such a threat by persons so minded and competent for the task, as we must assume for the present these defendants were, the supposed "adequate redress in court" referred to by the majority is illusory, for it is a very difficult thing for minority stockholders to compel the declaration of dividends by directors under the control of a recalcitrant majority. Not only is it difficult, it is wearisome and expensive. The idea that the alleged threats detailed in the complaint may not, in a case such as this, constitute duress is, in my judgment, wholly inconsistent with the modern and now well-

accepted relaxation of the law of duress. For to me, it is very plain that in these days when many an inexperienced widow derives most if not all of her income from stocks left by her husband, a threat of the kind now under consideration might be, as against such a one, the most potent kind of duress.

There is another assumption in the majority opinion with which my experience does not permit me to agree. It is to the effect that the management of a corporation, in the control of the majority stock interest, will not do anything to reduce the value of the stock for the purpose of acquiring the holdings of the minority. Common experience is to the contrary. An artificial and forced depreciation of stock value is the conventional method resorted to by an oppressive majority to freeze out an undesirable minority. In such a situation, the withholding of dividends that ought to be paid is ordinarily the first move in the game, and it can go a long way before litigation, at the instance of the minority, can interpose any serious obstacle.

There are other weapons such as excessive salaries and contracts expensive to the corporation but profitable to its management which are available. We all know, or ought to know, that if the minority stockholders, or any of them, are inexperienced and ignorant, or timid and needy, they become easy targets for operations of the kind charged against these defendants. They are clearly within the "class of cases where, although there may be a legal remedy, his situation or the situation of his property is such that the legal remedy would not be adequate to protect him from irreparable prejudice—where the circumstances and the necessity to protect himself or his property otherwise than by resort to the legal remedy may operate as a stress or coercion upon him to comply with the illegal demand." DeGraff v. County of Ramsey, 46 Minn. 319, 48 N. W. 1135.

There can never be justification for the use of threats, such as those here charged against defendants, in the circumstances wherein it is claimed they have used them. They may have constituted duress of a very potent kind. For that reason I am of the opinion that the order appealed from should be reversed.