## FRANK E. WISE v. MIDTOWN MOTORS, INC.[1]

April 28, 1950.

No. 35,021.

*Gray & Gray,* for appellant.

*Bundlie, Kelley, Finley & Maun* and *Mandt Torrison,* for respondent.

---

[1]Reported in 42 N. W. (2d) 404.

PETERSON, JUSTICE.

Plaintiff sued to recover $17,149.30 for breach of an express contract and for other damages resulting therefrom, and appeals from the order denying his motion for a new trial after verdict was directed for defendant.

The questions for decision are:

(1) Whether an employer who repudiates as void under the statute of frauds an oral contract for the rendition of services is entitled, in an action by the employe to recover upon a *quantum meruit* for services rendered, to have the measure of recovery determined by the void contract;

(2) Whether a threat to bring an action not to recover upon a just claim, but for the purpose of inflicting hardship and oppression upon the person threatened, which overcomes his free will, constitutes duress; and

(3) Whether one repudiating a release for duress is required in order to void it to tender to the party released money other than the consideration for the release which he received after its execution.

When it appeared from the opening statement of plaintiff's counsel that the contract sued on was an oral one for the hiring of plaintiff by defendant for a period of three years and that under the statute of frauds (M. S. A. 513.01) no action could be maintained thereon because it was not in writing, defendant moved that plaintiff be required to elect whether he relied for recovery on the contract or on a *quantum meruit*. Defendant elected to stand on a *quantum meruit,* and the case then proceeded upon that basis.

Plaintiff commenced this action in July 1948. Among other defenses, defendant claimed that subsequent to the commencement of this action plaintiff, in consideration of $200, released it from all liability asserted therein. Plaintiff claimed that the release was obtained by duress and that by a timely tender to defendant of the $200 in question he voided the release *in toto*.

The evidence showed that plaintiff was a highly skilled automobile motor tune-up mechanic; that he formerly lived in Dayton, Ohio, where he became acquainted with Clarence Rexeisen, an official of defendant; that in October 1947 Rexeisen after some negotiating offered plaintiff on behalf of defendant three years' employment as a tune-up mechanic and supervisor in St. Paul at an annual salary of $4,500 for the first year, $5,000 for the second year, and $5,500 for the third year; that plaintiff accepted the offer; and that in November 1947 plaintiff came to St. Paul and began working for defendant. Plaintiff performed the services agreed upon until June 1948, when he was discharged.

Plaintiff testified that the services he rendered to defendant were of the reasonable value of $10,000 and that he had received for his services $3,136.15, from which there were certain withholdings.

The release was executed on Monday, January 10, 1949. At that time plaintiff was employed in Minneapolis by the Sun Electric Company, whose business manager was F. J. Schindler. Plaintiff meanwhile by a garnishment proceeding ancillary to this action garnished defendant's bank account, thereby tieing up about $34,-000 needed by defendant in operating its business. Deeming it important to defendant to obtain a release of the garnishment, Rexeisen undertook to settle the main action. After having failed in some direct negotiations with plaintiff, notwithstanding the fact that plaintiff was then represented by counsel, Rexeisen on Saturday, January 8, 1949, arranged with Schindler, plaintiff's superior at Sun Electric Company, to have plaintiff, who otherwise would have been out of the city on the following Monday, to remain in the city on that day and be present at Sun's place of business. On the intervening Sunday, Rexeisen copied from a book furnished him by one of defendant's attorneys in his office the form of the release executed by plaintiff. It was to the effect that plaintiff received $200 in full payment, satisfaction, release and discharge of any claims, demands, or actions he might have against defendant arising out of the employment. On Monday,

Rexeisen went to Sun's place of business with the release and there, in Schindler's office in the presence and with the aid of Schindler, induced plaintiff to sign it without change or alteration of any sort. Before signing, there had been a conference of about two hours' duration, in the course of which Rexeisen threatened plaintiff, as he had done before, that defendant would sue plaintiff to recover the $40,000 to $50,000 damages which the pending proceedings had caused it; that Rexeisen would bring to the trial a lot of witnesses from Detroit, Michigan, and Cleveland, Ohio, including plaintiff's former boss; that the expense would amount probably to $50,000; that plaintiff would be paying for the rest of his life the judgment defendant would recover against him; and that bankruptcy would be the only way out for him. Rexeisen was angry, pounded his knee, and said that he would not deal with any lawyer. Mr. Allan Gray of St. Paul, plaintiff's counsel, had advised plaintiff, after the latter had been approached previously by Rexeisen relative to settlement, not to settle. While the conference in question was in progress in Schindler's office, plaintiff tried to get in touch with Gray, but was told that he was in court. Plaintiff was then put in communication with another lawyer in Minneapolis, who told him that it was legal to settle in the manner then being attempted by Rexeisen. Among other things, Schindler told plaintiff that he (Schindler) wanted to get this thing settled or he (plaintiff) was "through." Plaintiff was worried, upset, and under strain.

Under these circumstances, plaintiff executed the release. Rexeisen gave plaintiff a check for $200 and cashed it for him immediately. After the release had been executed he gave plaintiff another $100 cash for his attorneys.

Almost immediately thereafter, plaintiff got in touch with Gray, and the two went to defendant's office, where they notified defendant that plaintiff rescinded the settlement and release and tendered to it the $200 paid to plaintiff for the release, but not the $100 for plaintiff's attorneys received by plaintiff from defendant after the release had been executed.

Plaintiff contends that, irrespective of the oral contract, upon which he concedes he cannot maintain an action as against defendant's objection that it is void under the statute of frauds, he is entitled to recover the reasonable value of the services rendered by him thereunder; and that the release was obtained by duress. Defendant contends that, conceding that plaintiff cannot maintain an action on the oral contract, the contract measures the amount of his recovery even though it is unenforceable under the statute of frauds, and that the evidence is such as to preclude a finding of duress.

In directing a verdict for defendant, the trial judge held in accordance with defendant's contentions here.

■ It is well settled that where the employer-defendant repudiates an oral contract which is within the statute of frauds, and therefore unenforceable, plaintiff may recover the reasonable value of the services rendered under the contract. Oxborough v. St. Martin, 169 Minn. 72, 210 N. W. 854, 49 A. L. R. 1115; Mc-Gilchrist v. F. W. Woolworth Co. 138 Or. 679, 7 P. (2d) 982, see, 16 Minn. L. Rev. 875. There is a conflict of opinion as to whether the unenforceable contract measures the right of recovery so far as it has been performed or is merely admissible as an *admission* of the parties relative to that question for whatever evidentiary worth it possesses under the circumstances of the particular case. In Spinney v. Hill, 81 Minn. 316, 84 N. W. 116, we recognized that the reasoning of La Du-King Mfg. Co. v. La Du, 36 Minn. 473, 31 N. W. 938, and Kriger v. Leppel, 42 Minn. 6, 43 N. W. 484, holding that the unenforceable contract measures the recovery for services rendered thereunder, was not satisfactory, but made no change. In the Oxborough case, after reviewing our prior decisions, we held that the unenforceable contract is admissible as an "admission" and not as the measure of recovery for performance. According to sound principle and the weight of authority, where an employer-defendant repudiates a contract of employment as unenforceable under the statute of frauds, the employe is entitled to recover the reasonable value of the services rendered by

him thereunder, and in such a case the unenforceable contract is admissible as an *admission* as to the value of the services performed, but not as the measure of the employe's recovery. Annotation, 49 A. L. R. 1121; 49 Am. Jur., Statute of Frauds, § 573. In the McGilchrist case, the court said (138 Or. 687, 7 P. [2d] 985):

"In our opinion it is inconsistent and illogical to urge the invalidity of a contract, void under the statute, to defeat plaintiff's cause of action and then assert it to be binding and conclusive as to the measure of recovery."

It is reasonable to hold that a defendant who asserts the statute of frauds as a defense should not be permitted to insist on the price therein named as the measure of recovery in the *quantum meruit* action, for the reason given for so holding in Williams v. Bemis, 108 Mass. 91, 93, 11 Am. R. 318, where the court said: "It [the contract] cannot be treated as a nullity for one purpose, and as a contract for another."

In the Oxborough case, 169 Minn. 72, 210 N. W. 854, 49 A. L. R. 1115, *supra*, we settled our rule in accordance with sound principle and the weight of authority, and in effect—that is, in *sub silentio*—overruled our prior decisions insofar as they were in conflict with the views there expressed. We now expressly so overrule them.

■ We take it to be undisputed that duress is coercion by means of physical force or unlawful threats which destroys the victim's free will and compels him to comply with some demand of the party exerting the coercion. The standards of resisting power of the victim are personal and subjective rather than objective—that is, the existence of duress is to be determined by whether the coercion was of such a character as to overcome the free will of the victim rather than that of a person of ordinary courage and firmness.[2] Brown County Bank v. Hage, 156 Minn. 460, 195 N. W.

---

[2] The law of duress differs in this respect from the law of negligence, under which the standard of required care is objective—that of the fictitious reasonably careful person of ordinary prudence. See, 4 Dunnell, Dig. & Supp. § 6970.

275; Joannin v. Ogilvie, 49 Minn. 564, 52 N. W. 217, 16 L. R. A. 376, 32 A. S. R. 581; Winget v. Rockwood (8 Cir.) 69 F. (2d) 326; 2 Dunnell, Supp. § 2848. The test is not the nature of the threats, but rather the state of mind induced thereby in the victim, or, as said in the Joannin case, *supra* (49 Minn. 568, 52 N. W. 218, 16 L. R. A. 376, 32 A. S. R. 581), "whether or not the party really had a choice,—whether 'he had his freedom of exercising his will.'" Thus, the question here is whether plaintiff's free will was overcome by coercion.

Because a person has a right to threaten to do that which he has a right to do, a threat to bring an action to enforce a lawful demand, or one which he in good faith believes to be lawful, does not constitute duress. Zimmermann v. Benz, 162 Minn. 47, 202 N. W. 272; Minneapolis Land Co. v. McMillan, 79 Minn. 287, 82 N. W. 591. But one has no right to threaten another, in order to accomplish an ulterior purpose, with a groundless action or with an action to enforce some just legal demand where the purpose is not to enforce the demand, but rather by exceeding the needs for enforcement thereof to so use legal process as to oppress his adversary and to cause him unnecessary hardship. A threat to so use legal process constitutes duress where its coercive effect is to overcome the free will of the victim. Snyder v. Samuelson, 140 Minn. 57, 167 N. W. 287; In re Prima Co. (7 Cir.) 98 F. (2d) 952; Kunkel Auto Supply Co. v. Leech, 139 Neb. 516, 298 N. W. 150; Weber v. Kirkendall, 44 Neb. 766, 63 N. W. 35. In the Snyder case, the facts were substantially the same as those here. In that case, defendants were coerced to execute a contract by threats of the commencement of a lawsuit which would cause them to "lose everything" and which would cost them more than the amount of the contract and which, as here, were repeated, in the absence of defendants' counsel, when the contract was signed, by threats of a "big lawsuit" with further trouble and more expense. We there held that under such circumstances the existence of duress was a fact question.

We think that under the governing rules of law the existence of duress here was, under the evidence, a fact question. First, plaintiff was in such state of mind as to be, if not ripe for being, at least a likely victim for coercion. Rexeisen had already threatened and harassed him. He had been discharged by defendant and undoubtedly had the unpleasant incidents of that experience in mind. The evidence shows that he was worried and under strain. On top of all this, the Sun company, his employer, through Schindler, was coöperating with defendant. Second, the means employed were unlawful. While defendant had a right to threaten plaintiff with an action for abuse of garnishment process, if it had such a cause of action or in good faith believed that it did, there was no basis in the evidence for the view that defendant either had such a cause of action or that it in good faith believed that it had. Plaintiff had a right to sue to recover upon a *quantum meruit* and to garnish defendant's bank account. Defendant had ample remedies for relief from the garnishment either by obtaining a discharge thereof by the giving of a bond under M. S. A. 571.61 or by discharge thereof under § 571.50 "as to any property or indebtedness in excess of the amount which may be required to satisfy plaintiff's judgment." It is impossible in any view of the law and the evidence to see how defendant could have been damaged in the amount of $40,000 to $50,000, the amount of the threatened action against plaintiff. The threatened action was not only groundless, but was to be waged with hardship and oppression to ruin plaintiff's future prospects—all, so far as here appears, because plaintiff brought this action against defendant and garnished its bank account. Furthermore, defendant made no demand on plaintiff to release the excess. So far as here appears, plaintiff instituted the action and garnishment in good faith. There were other unlawful means employed calculated to overcome plaintiff's free will. While the Sun company had the undoubted right acting singly to discharge plaintiff as its employe (see, Harding v. Ohio Casualty Ins. Co. 230 Minn. 327, 41 N. W. [2d] 818), the fact is that the meeting in Schindler's office and Schindler's statement

to plaintiff in effect that he would be "through" if this case was not then settled, warranted plaintiff in believing that Schindler would discharge him if he did not sign the release and that the Sun company was coöperating with defendant. A threat to cause a person loss of employment may amount to duress (Cox v. Edwards, 120 Minn. 512, 139 N. W. 1070; Fuerst v. Musical Mut. Protective Union, 95 N. Y. S. 155). Here, it was employed as a factor to make plaintiff succumb to the coercion exerted by Rexeisen. Finally, the circumstances show that defendant acted in bad faith and with bad motives in obtaining the release. While it was lawful for defendant to procure a release from plaintiff by direct dealing with him, even though he was then represented by counsel (Krippner v. Matz, 205 Minn. 497, 287 N. W. 19), defendant's conduct under the circumstances permits an inference of wrongdoing and intent to override plaintiff's legal rights. As said in Desaman v. Butler Brothers, 118 Minn. 198, 203, 136 N. W. 747, 748, 749, Ann. Cas. 1913E, 642, in speaking of a settlement and payment of a judgment by direct negotiation with plaintiff without his attorney's knowledge and consent:

"* * * An attorney is the legal adviser and confidant of his client. The other party to the litigation knows that. He also knows that, when it comes to such an important stage of the suit as a compromise, the client needs the advice and counsel of his attorney, * * *. Fairness and common honesty would indicate that settlements of lawsuits should not be engineered in the dark, * * *."

In the final analysis, the evidence permits an inference that plaintiff was compelled to sign the release prepared in advance for the purpose without change or negotiation, and that it was forced upon him. The evidence permits the inference that there was no negotiation at all between plaintiff and Rexeisen; that plaintiff had "no choice," which under the rule of the Joannin case, 49 Minn. 567, 52 N. W. 217, 16 L. R. A. 376, 32 A. S. R. 581, *supra,* is the test of the existence of duress; that the signing of

the release was compelled by the combined threats of Rexeisen and Schindler; and that in a legal sense there was duress.

Plaintiff's tender to defendant of the $200 received by him for the release was all that was required to void it. A party repudiating a release for duress is not required to return more than the consideration given for it. The $100 given by defendant after the release was executed was no part of the consideration for the release.

The trial court erred in holding that the unenforceable contract measured plaintiff's right of recovery and that there was no evidence that the release was obtained by means of duress. Defendant's contention that plaintiff failed to restore the *status quo* by return of the consideration received for the release is plainly without merit. Because of the errors mentioned, there should be a new trial.

Reversed and new trial granted.