# United States Court of Appeals

### For the Eighth Circuit

_____

No. 15-2657

_____

Timothy Olmsted

*Plaintiff - Appellant*

v.

Saint Paul Public Schools

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: February 10, 2016
Filed: August 1, 2016

_____

Before SMITH and COLLOTON, Circuit Judges, and ERICKSON,[1] District
Judge.

_____

SMITH, Circuit Judge.

Timothy Olmsted, a former tenured teacher with the Saint Paul Public School
District ("District"), resigned from his teaching position with the District after several

_____

[1]The Honorable Ralph R. Erickson, Chief Judge, United States District Court
for the District of North Dakota, sitting by designation.

student-related complaints were made against him. The District accepted Olmsted's resignation. Later, Olmsted attempted to unilaterally rescind his resignation and resume his teaching role, but the District refused to reinstate him. Olmsted sued the District for, among other things, breach of his employment contract. The District moved for summary judgment, and the district court[2] granted summary judgment in favor of the District. Olmsted appeals the district court's decision, arguing that his resignation could be rescinded because when he resigned he (1) was under duress and (2) relied on material misrepresentations from the District. We affirm.

I. *Background*

Olmsted worked for the District as a teacher from 1995 until his resignation in 2012. During the 2011 school year, families of several students alleged that Olmsted racially discriminated against certain students and exhibited other inappropriate conduct toward students. The District investigated the allegations, and on January 12, 2012, the District placed Olmsted on paid administrative leave "pending further investigation of allegations of serious misconduct." The District notified Olmsted that he could contact his union representatives and provided him with the union representatives' contact information. Some students filed a federal lawsuit against the District. *See J.W. v. St. Paul Pub. Sch. Indep. Sch. Dist. No. 625*, 12-cv-01369 (D. Minn.).[3]

While the District investigated, Olmsted asked Margaret Luger-Nikoli ("Luger"), a union attorney with Education Minnesota, to represent him against the District. Olmsted understood that Luger would correspond with the District on his behalf. When Luger began representing Olmsted, she contacted the District's counsel, Jeff Lalla, with whom she had a good working relationship, and said, "if this is going

---

[2]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

[3]The parties later settled this lawsuit on January 23, 2013.

to a higher level, basically, if this is going to become a termination case, can you please tell me [when] that happens."

Luger testified that on March 8, 2012, Lalla called and informed her that the District "would propose termination at a school board meeting." Luger asked Lalla for the basis of the District's termination decision, and Lalla replied that the investigation had uncovered additional issues. When pressed by Luger for specifics, Lalla provided her with examples from the District's written report, but Lalla did not specify any particular charges to be brought against Olmsted. At that point, Lalla told Luger that he had not begun drafting formal charges against Olmsted, and he suggested that if Olmsted resigned, the District would not issue a report of the findings of the investigation to the Board of Teaching. Luger asked that Lalla delay drafting formal charges until she had an opportunity to discuss the situation with Olmsted.

Luger relayed the information that she had received from Lalla to Olmsted. Luger discussed Olmsted's potential alternative responses despite not knowing what charges the District planned to pursue formally. Luger advised Olmsted that he could (1) acquiesce in the termination, (2) negotiate a separation, or (3) go to a hearing. Olmsted only "vaguely" remembers Luger informing him of these options. Olmsted testified that he did not consider these options to be real choices; instead, he felt like the District was placing a "gun to [his] head" forcing him to resign. Olmsted discounted the seriousness of the allegations and characterized them as "ridiculous." He also remembers Luger informing him that he had a statutory right to a hearing if the District brought termination charges.

On March 11, 2012, prior to the District taking any action, Olmsted e-mailed Luger a draft resignation letter. In the e-mail, Olmsted requested that in exchange for his resignation, he receive his sick days, a clean file, a letter of recommendation, and an opportunity to continue to teach driver's education. Within five minutes, Luger

responded: "Tim, Let's talk tomorrow. Do not turn this in to anyone until we have a chance to discuss it." When Luger spoke with Olmsted by phone, he reiterated that he would like to receive his sick days and continue to teach driver's education in exchange for his resignation.

Luger then negotiated with Lalla on Olmsted's behalf. The District agreed to permit Olmsted to exhaust his accumulated sick days if he was demonstrably ill, but it would not allow him to continue to teach driver's education. Luger conveyed the District's response to Olmsted. Based on the District's counteroffer, Olmsted agreed to go on sick leave and resign at the end of his banked sick leave, which ran through October 2012.

On March 16, 2012, Olmsted submitted his notice of resignation to the District, effective as of October 8, 2012. The District's school board accepted and approved Olmsted's offer of resignation. The District never filed termination charges nor took any disciplinary action against Olmsted. Almost three months after his resignation, on June 12, 2012, Olmsted wrote the District to rescind his resignation. In the purported rescission letter, Olmsted declared that he is currently employed as a driver's education teacher and requested to resume his duties in that position. The District responded by letter, dated June 18, 2012, declining to accept Olmsted's resignation withdrawal or to grant his request to resume teaching driver's education.

Olmsted sued the District for, among other things, breach of his employment contract. The District moved for summary judgment, and the district court granted summary judgment in the District's favor. The district court determined that Olmsted's breach-of-contract claim hinged on the validity of his resignation. The district court rejected Olmsted's claims that his resignation was revocable. Olmsted now appeals that decision.

## II. *Discussion*

On appeal, Olmsted argues that the district court erred in granting summary judgment on his breach-of-contract claim. Olmsted contends that his resignation was revocable because when he resigned he (1) was under duress and (2) relied on material misrepresentations from the District. The parties agree that Minnesota law governs the contract issues raised in Olmsted's appeal. We review de novo the district court's grant of summary judgment. *Swift & Co. v. Elias Farms, Inc.*, 539 F.3d 849, 851 (8th Cir. 2008).

### A. *Duress*

Olmsted asserts that the District threatened to file termination charges against him when it had no intention or grounds to do so. Olmsted further asserts that in light of Minnesota law that requires "[a] school board [to] report to the Board of Teaching . . . when a teacher or administrator is suspended or resigns while an investigation is pending," *see* Minn. Stat. § 122A.20, subd. 2, the District illegally promised not to report him if he resigned. According to Olmsted, this threat and promise placed him under legal duress and compelled him to resign. As such, Olmsted argues that his resignation is revocable.

Under Minnesota law, it is "undisputed that duress is coercion by means of physical force or unlawful threats which destroys the victim's free will and compels him to comply with some demand of the party exerting the coercion." *Wise v. Midtown Motors*, 42 N.W.2d 404, 407 (Minn. 1950). "As a rule, duress will not prevail to invalidate a contract entered into with full knowledge of all the facts, with ample time and opportunity for investigation, consideration, consultation and reflection." *Am. Nat'l. Bank of Lake Crystal v. Helling*, 202 N.W. 20, 23 (Minn. 1925) (quotation and citations omitted); *see also St. Louis Park Inv. Co. v. R.L. Johnson Inv. Co.*, 411 N.W.2d 288, 291 (Minn. Ct. App. 1987) (holding that "a claim of duress will not be sustained when the claimant entered into the contract with full knowledge of all the facts, advice from an attorney, and ample time for reflection" (citing *Helling*,

202 N.W. at 23)). Minnesota does not recognize "economic duress" as a defense to a contract. *Bond v. Charlson*, 374 N.W.2d 423, 428 (Minn. 1985) (holding that "[d]uress is available as a defense to a contract *only when* agreement is coerced by physical force or unlawful threats" (emphasis added) (citing *Wise*, 42 N.W.2d at 407)); *see also St. Louis Park*, 411 N.W.2d at 291 ("Although a significant number of jurisdictions have recognized duress under the more specific categories of 'economic duress' or 'business compulsion,' Minnesota has yet to address the theory.").

Olmsted cannot demonstrate that his free will was overcome. *See Wise*, 42 N.W.2d at 407. No evidence supports the allegation that the District made an unlawful threat. Olmsted claims that the District unlawfully threatened him "[b]y pitting [his] property interest in his job against his property interest in his [teaching] license." Olmsted avers that the District had no grounds to file termination charges against him, thus it used its investigation only to intimidate. The District initiated an investigation of the claims made against Olmsted. Olmsted's resignation obviated the need for the District to seek his termination. The District's decision not to pursue termination charges against Olmsted after his resignation did not mean it lacked grounds to do so. When Olmsted learned of the District's proposed intention to file termination charges, he had already been placed on administrative leave "pending further investigation of allegations of serious misconduct," and he knew the nature of the allegations against him. Olmsted has not pointed to any evidence to support his contention that the District had no grounds to file termination charges against him.

Instead, Olmsted posits that the District has a statutory duty to report teachers that are under investigation. Assuming this statutory duty, Olmsted infers that the District had no basis to file any charges against him because it did not report him to the Board of Teaching. But the District presented evidence that it did not make a report every time a teacher was suspended, so the absence of a report neither proves nor disproves the validity of any charges under investigation at time of his

-6-

resignation. Olmsted has not pointed to any record evidence that would support his claim that the District unlawfully threatened him. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (holding that on a motion for summary judgment, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" and "there must be evidence on which the jury could reasonably find for the plaintiff").

Even if Olmsted could demonstrate that the District unlawfully threatened him, the threat was cured applying the factors set forth in *St. Louis Park*. Olmsted had full knowledge of all the facts, advice from an attorney, and ample time for reflection. Olmsted did not know the specific charges, if any, that the District planned to bring against him, but he was aware of the nature of the allegations against him based on his conversations with the District's investigative team. Olmsted claims that he felt like the District had a gun to his head, but he also "vaguely" remembers Luger informing him of his options. Further, the record demonstrates that throughout the investigation and his separation from the District, Olmsted was represented by and received counsel from Luger, a union attorney skilled in the relevant matters. Finally, approximately eight days elapsed between the time that Olmsted first learned of the District's plan and when Olmsted ultimately, without prompting by the District, submitted his notice of resignation. This period of time provided Olmsted with ample opportunity to reflect on his options.

Olmsted claims that Minnesota courts only apply the *St. Louis Park* factors when a party is claiming duress due to a generic threat. He avers that the factors do not apply in cases involving an *unlawful* threat. We believe that Minnesota law is to the contrary. *See, e.g.*, *Theisen v. Theisen*, No. C6-99-2042, 2000 WL 979124, at *2 (Minn. Ct. App. July 18, 2000) (unpublished) (finding that an unlawful threat of physical violence was cured under the factors set forth in *St. Louis Park*); *Olchefski v. St. Paul Pioneer Press*, No. C9-93-417, 1993 WL 302116, at *3 (Minn. Ct. App. Aug. 10, 1993) (unpublished) (holding that unlawful threat by defendant to lie about

plaintiff and "deny everything" if plaintiff brought a lawsuit were cured under *St. Louis Park* factors). Moreover, Minnesota law connects duress to unlawful threats, not just any threat. Olmsted's argument, if accepted, would blot out the "rule" announced in *Helling,* and reiterated in *St. Louis Park,* because in the absence of an *unlawful* threat, there is no duress at issue to "be sustained." *See St. Louis Park*, 411 N.W.2d at 291.

"Rescission of a contract by agreement or abandonment requires an offer and acceptance or, in other words, the mutual consent of the parties." *S.S. Silberblatt, Inc. v. Seaboard Sur. Co.*, 417 F.2d 1043, 1054 (8th Cir. 1969) (citations omitted). In the absence of duress, Olmsted's resignation was valid when accepted. His attempted rescission of that resignation merely constitutes an offer and requires that the District provide its consent. The District did not. He cannot unilaterally rescind his resignation.

B. *Material Misrepresentation*

Olmsted next argues that the District made material misrepresentations of fact on which he reasonably relied when he resigned. Olmsted claims that the District misrepresented that it had "completed" its investigation and made a number of adverse findings against him. Olmsted contends that "there were no adverse findings against him and the [D]istrict did not have any allegations that could form the basis for charges against him." Olmsted claims that he relied on these misrepresentations when he agreed to resign.

In Minnesota, a contract "is voidable if a party's assent is induced by either a fraudulent or a material misrepresentation by the other party, and is an assertion on which the recipient is justified in relying." *Carpenter v. Vreeman*, 409 N.W.2d 258, 260–61 (Minn. Ct. App. 1987) (citing Restatement (Second) of Contracts § 164(1) (1981)). A misrepresentation is material "if it would be likely to induce a reasonable person to manifest his or her assent or the maker knows that for some special reason

it is likely to induce the particular recipient to manifest such assent." *Id*. (citing Restatement (Second) of Contracts § 162(2)).

There is no evidence that the District made material misrepresentations to Olmsted. First, Olmsted offers no evidence that the District ever told him that it had "completed" its investigation. Until completed, the investigation would not have officially made any adverse findings. There was no direct communication between the District and Olmsted; Olmsted's counsel acted as an intermediary for all of the communication. Olmsted offers no evidence that Luger told him that the District had completed its investigation. Second, Olmsted's argument depends on his claim that the District had no basis to propose termination but manipulated him into resigning. Though the investigation did not need to proceed given Olmsted's decision, the evidence belies Olmsted's claim.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____