In the

# United States Court of Appeals
## For the Seventh Circuit

No. 21-2644

JOSE AGEO LUNA VANEGAS,

*Plaintiff-Appellant,*

*v.*

SIGNET BUILDERS, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 21-CV-54 — **James D. Peterson**, *Chief Judge.*

ARGUED APRIL 13, 2022 — DECIDED AUGUST 19, 2022

Before ROVNER, WOOD, and ST. EVE, *Circuit Judges.*

WOOD, *Circuit Judge.* Signet Builders, Inc., is a nationwide construction company that builds commercial, industrial, and agricultural structures. In 2019, Signet hired Jose Ageo Luna Vanegas to build livestock confinement facilities in Wisconsin and Indiana. Luna Vanegas alleges that he regularly worked more than 40 hours a week, but that Signet refused to pay him the time-and-a-half overtime rate required by the Fair Labor Standards Act (FLSA). See 29 U.S.C. § 207(a).

The district court dismissed Luna Vanegas's complaint, holding that his construction work fell under the FLSA's exemption for agricultural work. See 29 U.S.C. § 213(b)(12). But the question whether this is so is a fact-intensive inquiry that rarely can be decided solely on the face of a complaint. Because the facts properly in the record do not demonstrate the applicability of the exemption beyond debate, we reverse.

## I

Luna Vanegas, a Mexican citizen, was hired by Signet to work in the United States on an H-2A guestworker visa. The H-2A visa program, which is administered by the United States Department of Labor (DOL or Department), authorizes foreign workers to perform "agricultural" work (a term defined by the statute) in the United States on a temporary basis, if the proposed employer can show that there are too few domestic workers willing and able to do the work needed and that the use of guestworkers will not undercut local workers' wages and working conditions. See 8 U.S.C. § 1101(a)(15)(H)(ii)(a); 8 U.S.C. § 1188(a)(1). The program is growing rapidly. In 2010, the Department certified about 79,000 H-2A visas; by 2019, that number swelled to 258,000. U.S. DEP'T OF AGRIC., ECON. INFO. BULL. NO. 226, EXAMINING THE GROWTH IN SEASONAL AGRICULTURAL H-2A LABOR 2 (2021). As the H-2A program has expanded, so have complaints from oversight agencies and advocacy groups that it is plagued with abuse. See, *e.g.*, U.S. GOV'T ACCOUNTABILITY OFF., GAO-15-154, INCREASED PROTECTIONS NEEDED FOR FOREIGN WORKERS (2015).

Luna Vanegas alleges that he and his fellow workers were victims of that abuse. Because this case was resolved on a motion to dismiss, we accept all well-pleaded factual allegations

in Luna Vanegas's complaint as true. See *Pavlock v. Holcomb*, 35 F.4th 581, 585 (7th Cir. 2022). According to that complaint, Signet was hired as a subcontractor to build livestock structures on farms in Wisconsin and Indiana. Luna Vanegas was assigned to these projects, where his work consisted entirely of construction of buildings that would later house livestock. Although he worked on land belonging to farms, he never had any contact with animals.

Luna Vanegas routinely worked more than 40 hours a week, but Signet did not pay him extra for his overtime hours. See 28 U.S.C. § 207(a). He filed a complaint under the FLSA and then moved for conditional certification of a collective action on behalf of all Signet H-2A workers who, like him, were exclusively assigned to construction work. A wage-theft claim such as Luna Vanegas's is straightforward: the plaintiff states a claim for relief if she alleges that she was owed time-and-a-half for overtime work but did not receive it.

Signet responded with a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). It did not, however, point to any defect in the initial pleading, nor did it contest the accuracy of the description of its payment practices. Instead, it raised the affirmative defense that Luna Vanegas is an agricultural worker who is exempt from FLSA's overtime protections. See 29 U.S.C. § 213(b)(12).

Before we discuss the merits, the procedure Signet followed deserves a word or two. Rule 8 of the Civil Rules carefully distinguishes between defenses that take the form of denials, covered in subpart (b), and affirmative defenses, addressed in subpart (c)(1). Rule 8(c)(1) states that "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense …," and provides a nonexclusive

list of such defenses. The defending party must come back with a "responsive pleading" (*i.e.*, an answer for the defendant, see Rule 7(a)(2)), unless it is raising one of the seven defenses listed in Rule 12(b) as appropriate for a motion. Affirmative defenses do not appear on that list.

It follows from this structure and from the plain language of Rule 8(c)(1) that an affirmative defense must be raised in the answer, not by motion. *Vazquez v. Indiana Univ. Health, Inc.*, 40 F.4th 582, 588 (7th Cir. 2022). Once the pleadings are closed, any party may move for judgment on the pleadings, pursuant to Rule 12(c). There is a real consequence to this structure: it means that a plaintiff's complaint need not anticipate or refute potential affirmative defenses. The Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted is limited to situations in which, even taking the facts as plaintiff portrays them, the law does not confer a right to relief (the old common-law demurrer). Rarely will the face of the complaint so clearly prove the opponent's affirmative defense that immediate dismissal, prior to the filing of an answer, will be proper. See *Hecker v. Deere & Co.*, 556 F.3d 575, 588 (7th Cir. 2009). As a practical matter, courts have sometimes taken shortcuts, particularly if the complaint leaves no doubt that there is a good statute-of-limitations or claim-preclusion defense. But it is safer to insist on compliance with the rules.

The district court thought that the present case was one of the rare ones in which the plaintiff had pleaded himself out of court by including "facts that establish an impenetrable defense to its claims" in the complaint. See *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008). It granted Signet's motion to dismiss solely because it thought that the complaint

unambiguously showed that Luna Vanegas fell within FLSA's exemption for agricultural workers. As we now explain, we conclude that this is not the case.

## II

### A

Since 1938, the FLSA has required employers to pay eligible workers at least one and a half times their regular rate of pay for time worked beyond the 40-hour workweek. See 29 U.S.C. § 207(a). But when Congress passed the law, influential lawmakers from the South demanded that the Act exclude farmworkers, thereby ensuring that Southern farms could continue paying low wages to their predominantly Black agricultural crews. See Marc Linder, *Farm Workers and the Fair Labor Standards Act: Racial Discrimination in the New Deal*, 65 TEX. L. REV. 1335, 1371–80 (1987). Today, the FLSA's overtime protections still do not apply to "any employee employed in agriculture." 29 U.S.C. § 213(b)(12).

Section 3(f) of the FLSA defines "agriculture" for these purposes to mean:

> [1] farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities (including commodities defined as agricultural commodities in section 1141j(g) of Title 12), the raising of livestock, bees, fur-bearing animals, or poultry, and [2] any practices (including any forestry or lumbering operations) performed by a farmer or on a farm as an incident to or in conjunction with

> such farming operations, including preparation
> for market, delivery to storage or to market or
> to carriers for transportation to market.

29 U.S.C. § 203(f).

Although this definition does not use formal subsections, it covers two types of agricultural activities, which we have marked as [1] "primary agriculture" and [2] "secondary agriculture." See *Bayside Enterprises, Inc. v. NLRB*, 429 U.S. 298, 300 (1977). Primary agriculture (our part 1) refers to activities ranging from "farming in all of its branches," to "the raising of livestock, bees, fur-bearing animals, or poultry." 29 U.S.C. § 203(f). Secondary agriculture (our part 2) sweeps in "any practices ... performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market." *Id.* Everyone agrees that Luna Vanegas was not performing primary agricultural work and that he performed work on a farm. Thus, the issue before us is whether Luna Vanegas was engaged in secondary agriculture—that is, does his complaint plead facts that unequivocally show that his construction work was "an incident to or in conjunction with" the farming operations of the livestock farmers on whose property he built the enclosures.

B

In approaching that question, we must recall at the outset that Signet bears the burden of proving that the agricultural exemption applies. See 29 C.F.R. § 780.2. Like all FLSA exemptions, the agricultural exemption must be "narrowly construed against the employer seeking to assert [it]" and

"limited to those who come plainly and unmistakably within [its] terms and spirit." *Id.* (internal quotations omitted).

We look for guidance from the Department, which has issued regulations to aid in that inquiry. See 29 C.F.R. §§ 780.100–105, 780.141–147. We then consult court cases construing the agricultural exemption. Throughout, we bear in mind the Supreme Court's recognition that "the line between practices that are and those that are not performed as an incident to or in conjunction with such farming operations is not susceptible of precise definition." *Holly Farms Corp. v. NLRB*, 517 U.S. 392, 408 (1996) (quoting 29 C.F.R. § 780.144) (cleaned up).

An interpretive rule explains that work falls within the agricultural exemption "only if it [a] constitutes an established part of agriculture, [b] is subordinate to the farming operations involved, and [c] does not amount to an independent business." 29 C.F.R. § 780.144. All three conditions must be met before an employer will qualify for the exemption. We focus on the third, which suffices to dispose of this appeal. Section 780.145 of the DOL regulations establishes a fact-driven, totality-of-the-circumstances test to determine whether Signet's construction business "amount[s] to an independent business" apart from agriculture:

> The character of a practice as a part of the agricultural activity or as a distinct business activity must be determined by examination and evaluation of all the relevant facts and circumstances in the light of the pertinent language and intent of the Act. The result will not depend on any mechanical application of isolated factors or tests. Rather, the total situation will control …

> Thus, the general relationship, if any, of the
> practice to farming as evidenced by common
> understanding, competitive factors, and the
> prevalence of its performance by farmers (see
> § 780.146), and similar pertinent matters should
> be considered.

29 C.F.R. § 780.145 (citing *Maneja v. Waialua Agric. Co.*, 349 U.S. 254, 264 (1955) ("[I]t is clear that we must look to all the facts surrounding a given process or operation to determine whether it is incident to or in conjunction with farming.")).

Signet has ignored the fact-driven, totality-of-the-circumstances test set forth in section 780.145. Instead, it relies exclusively on 29 C.F.R. § 780.136, which says that "[e]mployees engaged in the erection of silos and granaries" are "examples of the types of employees of independent contractors who may be considered employed in practices performed 'on a farm.'" Signet argues, and the district court agreed, that Luna Vanegas's work building livestock enclosures is analogous to building silos or granaries used by farms, and so it must be agricultural labor. As Signet would have it, our analysis should begin and end there.

But that very regulation goes on to explain that there is more to the inquiry. The next sentence reads:

> Whether such employees [including those erect-
> ing silos and graneries] are engaged in "agricul-
> ture" depends, of course, on whether the prac-
> tices are performed as an incident to or in con-
> junction with the farming operations on the par-
> ticular farm, as discussed in §§ 780.141 through
> 780.147; that is, whether they are carried on as a

> part of the agricultural function or as a sepa-
> rately organized productive activity (§§ 780.104
> through 780.144).

29 C.F.R. § 780.136. This additional language shows us that Signet's proposed test for agricultural labor elides the key question in this case. Luna Vanegas agrees that he was employed "on a farm," but that alone is not enough to bring him under the agricultural exemption. See 29 C.F.R. § 780.144. Rather, we must ask whether his construction work was "carried out as a part of the agricultural function or as a separately organized productive activity" as defined by related regulations. See *id.*; see also 29 C.F.R. § 780.104 ("The question is whether the activity in the particular case is carried on as part of the agricultural function or is separately organized as an independent productive activity."). If Luna Vanegas's work was part of "a distinct business activity" from farming, the agricultural exemption does not apply. 29 C.F.R. § 780.145.

The DOL regulations provide a non-exhaustive list of factors that help resolve that issue. See 29 C.F.R. §§ 780.141–147. They establish a nuanced, fact-intensive inquiry that is ill-suited for resolution based only on the allegations of a complaint. One regulation explains that the meaning of "agriculture" in the FLSA changes over time with the increasing specialization of labor. See 29 C.F.R. § 780.104. Work that once was routinely performed by farmers can evolve into something "separately organized as an independent productive activity." *Id.* For example, at an earlier point in American history, farmers typically produced their own fertilizer "as part of their normal agricultural routine." *Id.* But in time, home-made fertilizers were replaced by mass-produced factory

fertilizers, thus making factory fertilizer an "independent productive function[], not agriculture." *Id.*

Another relevant fact is whether the work the plaintiffs performed is "ordinarily performed" by farmers themselves or by independent businesses hired by those farmers. 29 C.F.R. § 780.146 (listing "the extent to which such a practice is ordinarily performed by farmers incidentally to their farming operations" as a relevant factor); see also 29 C.F.R. § 780.145 (listing "relevant facts" including "the prevalence of [a practice's] performance by farmers"). If farmers typically hire independent contractors such as Signet to build livestock enclosures, that would be a "significant indication" that building those enclosures is not agricultural work within the meaning of section 3(f). 29 C.F.R. § 780.146.

At this stage in the litigation, this factor strongly favors Luna Vanegas. Nothing in the complaint addresses whether farmers in the modern agricultural economy ordinarily build their own large livestock enclosures or hire separately organized construction companies to do so—facts relevant only to the affirmative defense. As we explained above, so long as Luna Vanegas's complaint does not admit facts that "establish an impenetrable defense to its claims[,]" *Hecker*, 556 F.3d at 588, the agricultural exemption does not justify dismissal.

Second, courts must ask whether Signet's construction contracts are "in competition with agricultural or with industrial operations." 29 C.F.R. § 780.146; see also 29 C.F.R. § 780.145 ("[C]ompetitive factors … should be considered."). If a business's primary competitors are not farming operations, then work performed for that business is unlikely to fall within the agricultural exemption. Again, this factor favors

Luna Vanegas. Nothing in the complaint indicates that Signet competes with farms, rather than other construction firms.

A third relevant consideration is the division of labor and supervision between a contractor's employees and those of the farmer. If a farm's employees "do not assist" with work performed by a contractor's workers, or if there is "minimal overlap" between a farmer's work and a construction crew's work, or if a contractor's employees "work as a unit" independently from farmers, the logical implication is that the contractor's work does not fall within the section 3(f) exemption. See *Holly Farms*, 517 U.S. at 403–04; see also 29 C.F.R. § 780.145 (listing "the extent to which the practice is performed by ordinary farm employees[,] the amount of interchange of employees between the operations," and "the degree of separation established between the activities" as relevant factors).

As before, nothing in the complaint supports Signet on this point. Luna Vanegas alleges that he was hired by, paid by, and worked exclusively for Signet. The complaint does not even hint that Luna Vanegas was supervised by or worked side-by-side with employees of the farms with which Signet had contracts. If such evidence exists, Signet may develop it later in the case. For now, this factor favors Luna Vanegas.

There is also a hodge-podge of other relevant factors:

- the "common understanding" of farming;
- the relative amount of an employer's capital "invested in land, buildings and equipment for [] regular farming operations" versus the amount invested in other

commercial enterprises, such as construction or manu-
facturing;

- the "degree of industrialization involved";
- the "amount of payroll" a particular employer spends
  on regular farming activity relative to other work; and
- the "amount of revenue" a particular employer re-
  ceives from regular farming activity relative to other
  sources of income.

See 29 C.F.R. § 780.145. Although it is not relevant to this case,
courts considering the scope of secondary agriculture often
ask whether the work transforms an agricultural product (*e.g.*,
corn) into an industrial product (*e.g.*, canned corn). If so, that
work probably falls outside the agricultural exemption. See
29 C.F.R. § 780.146. This list of factors, moreover, is not ex-
haustive, because the DOL also instructs us to look at "similar
pertinent matters." 29 C.F.R. § 780.145. Finally, the regula-
tions caution that "the necessity of the activity to agriculture"
does not determine the outcome, and so the fact that farms
may need to build livestock enclosures before raising live-
stock does not transform construction work into agricultural
work. See 29 C.F.R. § 780.104.

We now turn briefly to some court decisions examining
the line between activities within and outside the exemption.
In *Maneja v. Waialua Agricultural Co.*, the Supreme Court held
that sugar plantation workers engaged in transporting cane
from the fields to the processing plant and workers engaged
in repair of the tools used in farming did qualify for the agri-
cultural exemption, but (based on a comprehensive look at
the market) those in the sugar processing ("milling") plant
did not. See 349 U.S. at 270. (The Court did find that the latter
workers fell under a different exemption, but it was specific

to sugar operations and thus irrelevant to our case.) The next year, the Court held that tobacco bulkers are not agricultural workers in part because "tobacco farmers do not ordinarily perform the bulking operation." *Mitchell v. Budd*, 350 U.S. 473, 481 (1956). Bulking, the Court explained, is the process of placing dried tobacco leaves into large piles (3,500 to 4,500 pounds apiece) for the fermentation process, after the leaves have been picked and dried. *Id.* at 475. It thus counts as processing, not agriculture. The Court reiterated this approach in *Holly Farms*, which held that workers who captured free-range chickens for transport to a slaughterhouse were not "agricultural workers" for purposes of the FLSA. 517 U.S. at 403; see also *Hodgson v. Idaho Trout Processors Co.*, 497 F.2d 58, 60 (9th Cir. 1974) (holding that workers who clean and process fish are not agricultural workers because they "work exclusively for the processing plant, there is a formal separation and division of function between the plant and the farms, and the farms do not supervise the plant, nor do they hire, fire, or pay [the plant's] employees").

Both the regulations and these decisions convince us that the district court adopted too narrow a focus when it looked only at the work that Luna Vanegas performed as an employee, omitting consideration of questions such as whether his employer was engaged in a productive activity separately organized from farming. Its approach is at odds with the observation in *Holly Farms* that it would be "sensible" to "home[] in on the status of the [workers'] employer" in the course of holding that workers who caught free-range chickens to be taken to slaughter were not agricultural employees. *Holly Farms*, 517 U.S. at 404.

C

In sum, work falls within the FLSA secondary agricultural exemption only if it is *both* "performed by a farmer or on a farm" *and* if it "does not amount to an independent business." 29 C.F.R. § 780.144. The Department's regulations establish a fact-intensive, totality-of-the-circumstances test to determine whether work performed on a farm is agricultural or if it is an independent business. They list many factors that bear on that analysis. Signet bears the burden of proving that the agricultural exemption applies, 29 C.F.R. § 780.2, and it has not carried that burden on the pleadings (we of course have nothing to say about how this case might develop further down the line).

All a complaint must do is state a plausible narrative of a legal grievance that, if proved, would entitle the plaintiff to relief. See *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). In the FLSA context, a plaintiff will typically meet this bar by alleging that she was owed wages and that those wages were never paid. That is what Luna Vanegas has done here. A complaint need not anticipate—much less refute—a possible affirmative defense. See *U.S. Gypsum Co. v. Indiana Gas Co., Inc.*, 350 F.3d 623, 626 (7th Cir. 2003). In rare circumstances, a plaintiff may "plead[] himself out of court" by admitting all of the essential elements of an affirmative defense in his complaint, *Hecker*, 556 F.3d at 588, but Luna Vanegas has not fallen into that trap. The complaint says little about most of the regulatory factors. Nothing in Luna Vanegas's complaint concedes that farmers ordinarily build their own livestock structures in the modern economy, that there was significant overlap between the work of Signet's construction employees and the work of people employed by the client farms, or that

Signet has invested significant portions of its capital in agricultural operations. We do not even know what farms Luna Vanegas worked on. His case, in short, was not a candidate for disposition under Rule 12(b)(6).

D

We briefly address two more points before we conclude. First, Signet argues that because the Department's Office of Foreign Labor Certification approved Luna Vanegas's H-2A visa, the Department has already decided that this work is agricultural. Congress has given DOL the task of issuing regulations spelling out what kinds of work qualify for an H-2A guestworker visa. The statute says that those regulations must include, *but are not limited to*, agricultural workers as defined by FLSA section 3(f). See 8 U.S.C. § 1101(a)(15)(H)(ii)(a) (emphasis added). The current regulations define agricultural labor for purposes of the H-2A program to include "agricultural labor" as defined in FLSA, "agricultural labor" as defined (more broadly) in the Tax Code, logging, and pressing apples for cider. 29 C.F.R. § 501.3(b). In other words, the criteria for receiving an H-2A visa are broader than the FLSA agricultural exemption, and so the fact that Luna Vanegas was admitted to the country on this type of visa does not automatically mean that the FLSA's agricultural exemption applies.

Finally, Signet argues that many of Luna Vanegas's arguments are forfeited because they were made in a more sophisticated form on appeal than they were before the district court. This is a non-starter. A party has the right to refine its argument on appeal. So long as Luna Vanegas "consistently presented the heart" of his case before the district court, his arguments are not forfeited even if "the nuances" of that argument change on appeal. *Fox v. Hayes*, 600 F.3d 819, 832 (7th

Cir. 2010). Luna Vanegas did all that he needed to do—he consistently made his core argument that he was misclassified as an agricultural worker at every stage in the proceedings. There was no forfeiture here.

### III

Employers invoking the agricultural exemption to the Fair Labor Standards Act bear the burden of showing that the affirmative defense applies. This is difficult, at best, using a motion under Rule 12(b)(6), and Signet has not carried that burden here. We REVERSE the judgment of the district court and REMAND for further proceedings consistent with this opinion.