STATE OF MINNESOTA

IN SUPREME COURT

A23-1275

Court of Appeals                                          Procaccini, J.
                                            Took no part, Gaïtas, J.
Doug Hoskin,

            Appellant,

vs.                                               Filed: September 10, 2025
                                           Office of Appellate Courts
Josh Krsnak, et al.,

            Respondents.

_____

Larina A. Alton, Lewis Brisbois Bisgaard & Smith LLP, Minneapolis, Minnesota, for appellant.

Arthur G. Boylan, Ryan M. Lawrence, Kathryn E. Campbell, Anthony Ostlund Louwagie Dressen & Boylan P.A., Minneapolis, Minnesota, for respondents.

_____

S Y L L A B U S

1.      Because a plaintiff's complaint need not anticipate and rebut an affirmative defense to survive a motion to dismiss based on that defense, a motion to dismiss based on an affirmative defense may be granted only if the allegations in the complaint, construed in the plaintiff's favor, establish an unrebuttable defense.

1

2.     Given our decision that the complaint was improperly dismissed based on the asserted affirmative defense, respondents Josh Krsnak and JT Manager, LLC, are no longer the "prevailing party" and are not entitled to contractual costs and attorney fees at this time.

Reversed and remanded.

O P I N I O N

PROCACCINI, Justice.

In this case, we are asked to consider whether a plaintiff's complaint must anticipate and rebut a potential affirmative defense to survive a motion to dismiss based on that affirmative defense.  Appellant Doug Hoskin and respondent Josh Krsnak, who managed respondent JT Manager, LLC, were longtime business partners who owned various business interests together.  Following several discussions between Hoskin and Krsnak, Hoskin sold certain business interests to Krsnak through JT Manager pursuant to several transfer agreements.  Hoskin later sued Krsnak and JT Manager, alleging that Hoskin executed the transfer agreements under duress and because of fraud.  Krsnak and JT Manager moved to dismiss Hoskin's complaint for failure to state a claim upon which relief can be granted.  Their motion was based primarily on an affirmative defense—release.  They argued that releases in the transfer agreements bar Hoskin's claims.  Hoskin countered that the releases are invalid because they were obtained through duress and fraud.

The district court granted Krsnak and JT Manager's motion and dismissed the complaint in its entirety.  The district court also awarded costs and attorney fees to Krsnak

2

and JT Manager under contractual provisions in the transfer agreements. The court of appeals affirmed, concluding that the releases in the transfer agreements bar Hoskin's claims and that Krsnak and JT Manager are entitled to costs and attorney fees.

We conclude that the court of appeals erred by requiring the complaint to allege facts sufficient to establish that duress and fraud invalidate the releases. We therefore reverse the conclusion of the court of appeals that the claims are barred by the releases and remand to the court of appeals to consider the district court's dismissal of five counts of the complaint on alternative grounds. Given our decision to reverse the dismissal of the complaint, we also reverse the award of costs and attorney fees.

**FACTS**

When we consider whether a complaint was properly dismissed for failure to state a claim, we "review the complaint as a whole," including documents referenced in the complaint, "to determine whether as a matter of law a claim has been stated." *Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 740 (Minn. 2000). In keeping with our motion to dismiss standard, we accept the allegations in Hoskin's complaint as true and construe all reasonable inferences in favor of Hoskin, the nonmoving party. *See Halva v. Minn. State Colls. & Univs.*, 953 N.W.2d 496, 500 (Minn. 2021).

As alleged in the complaint, Hoskin and Krsnak were "longtime business partner[s]" and "co-investors and co-members in numerous businesses in the real estate and/or parking facility space." Each held "an ownership stake" in Interstate Parking Company, LLC (IPC): Hoskin held 34 percent, and Krsnak held 10 percent. Hoskin, Krsnak, and other business partners also "held numerous [other] businesses and properties through IPC."

3

IPC was "principally involved in leasing parking facilities and operational management of parking services at those facilities." During the COVID-19 pandemic, the demand for public parking declined, and IPC "realiz[ed] very little parking income." As the pandemic continued, "it became clear that in order to survive, IPC needed additional capital," so IPC's owners, including Hoskin and Krsnak, "decided to apply for a Federal Main Street loan." Krsnak told Hoskin that he would "get it taken care of." Krsnak "was determined to attain" the loan from American Equity Bank, where he served on the board. Hoskin relied on Krsnak's representations and consequently "did not seek, nor encourage others to seek, alternative financing options."

During "a separate business discussion unrelated to the [loan]," Hoskin and Krsnak discussed the sale and transfer of some "business interests" from Hoskin to Krsnak. Krsnak and Hoskin met to discuss terms, and Krsnak offered to pay $350,000 for Hoskin's business interests.

Hoskin and Krsnak met again the following day, accompanied by legal counsel. Krsnak lowered the price he was willing to pay to $220,000 but offered to allocate $470,000 in federal historic tax credits to Hoskin. When Hoskin pointed out the decrease in Krsnak's offer, Krsnak agreed to approve on behalf of IPC an annual $150,000 salary for Hoskin. Krsnak then threatened that, if Hoskin did not accept the offer, Krsnak would undermine IPC's efforts to obtain the Main Street loan. The deadline to apply for the loan was that same day, and both Hoskin and Krsnak knew that "time was of the essence." Krsnak told Hoskin: "I'm not going to get the Main Street [Loan] unless we get this done,

4

Doug. If you don't sell to me along the lines and prices that we are discussing now, IPC would be in a world of hurt if they don't get that loan."

Hoskin objected to Krsnak's proposal, which "undervalued" Hoskin's interests. Krsnak reiterated that unless Hoskin signed the transfer agreements, which had been drafted by Krsnak and his attorney, Krsnak "would ensure that the Main Street loan program required to ensure the survival of IPC would not occur." Because "Hoskin's financial and other interests would be irreparably harmed" if IPC failed, Hoskin "had no choice but to sign over his membership units," and he signed the five transfer agreements "[u]nder duress."

Hoskin filed a complaint against Krsnak and JT Manager. The complaint contained ten counts: fraudulent nondisclosure (Count I), fraudulent misrepresentation (Count II), breach of the implied covenant of good faith and fair dealing (Count III), promissory estoppel (Count IV), breach of oral agreement (Count V), negligence (Count VI), breach of fiduciary duty (Count VII), quantum meruit (Count VIII), unjust enrichment (Count IX), and declaratory judgment determining that the transfer agreements are unenforceable because Hoskin executed them under duress (Count X).

In lieu of an answer, Krsnak and JT Manager filed a motion to dismiss Hoskin's complaint under Minnesota Rule of Civil Procedure 12.02(e), arguing that the complaint failed to state a claim upon which relief can be granted. Krsnak and JT Manager asserted

5

that releases in the transfer agreements bar Hoskin's claims.[1] These provisions stated that Hoskin "releases" Krsnak and JT Manager "from all claims, demands, damages, actions, and causes of action . . . arising out of or related to" the agreements. Krsnak and JT Manager alternatively argued that each of Hoskin's claims should be dismissed for claim-specific reasons. Hoskin opposed the motion. He argued that the releases are invalid because he executed them under duress and due to fraud. Hoskin also argued that each count in the complaint properly and adequately stated a claim upon which relief could be granted.

The district court granted Krsnak and JT Manager's motion and dismissed the complaint. The district court, focusing on the releases in the transfer agreements, first concluded "that economic duress is a factor to consider in determining whether the allegedly aggrieved party intended to release their legal claims" and that Hoskin's complaint alleged facts sufficient to show that he did not intend to release his claims. The district court then concluded that an aggrieved party must attempt to return the consideration paid in exchange for a release of claims before the release can be voided. Because the complaint "does not allege [that Hoskin] has or has attempted to return any amount of the consideration received for signing the Transfer Agreements," the district court determined that Hoskin did not take "the actions necessary to void the release

---

[1]  Hoskin's complaint does not refer to the releases or contain the word "release." But because the complaint refers to the *transfer agreements*, the court may consider these agreements (and the releases therein) on a motion to dismiss for failure to state a claim. *N. States Power Co. v. Minn. Metro. Council*, 684 N.W.2d 485, 490 (Minn. 2004) ("[A] court may consider documents referenced in a complaint without converting the motion to dismiss to one for summary judgment." (emphasis omitted)).

6

agreements." As a result, the district court concluded that the releases are valid and "bar[] all of Hoskin's claims."

The district court also, in the alternative, conducted a claim-specific analysis to determine whether the allegations in the complaint stated a claim for relief. The district court concluded that "[i]n the absence of the release agreements," Hoskin's claims for fraudulent nondisclosure (Count I), promissory estoppel (Count IV), breach of contract (Count V), breach of fiduciary duty (Count VII), and declaratory judgment (Count X) should be allowed to proceed. On the other hand, the district court determined that Hoskin's claims for fraudulent misrepresentation (Count II), breach of covenant of good faith and fair dealing (Count III), negligent misrepresentation (Count VI), quantum meruit (Count VIII), and unjust enrichment (Count IX) should be dismissed regardless of the releases.

Following the district court's dismissal of the complaint, Krsnak and JT Manager moved for costs and attorney fees, arguing that the transfer agreements authorize the "prevailing party" to recover costs and attorney fees "[i]n any action to enforce" the transfer agreements. Hoskin opposed the motion. The district court concluded that Krsnak and JT Manager were entitled to attorney fees and costs because they prevailed in an "action to enforce" the transfer agreements by securing the dismissal of Hoskin's complaint. The district court awarded $38,156.36 in costs and attorney fees to Krsnak and JT Manager.

Hoskin appealed the district court's dismissal of the complaint and its award of costs and attorney fees. On appeal, Hoskin argued that the district court erred by (1) dismissing the complaint based on the releases in the transfer agreements, (2) dismissing five of

Hoskin's ten claims on alternative grounds, and (3) awarding costs and attorney fees to Krsnak and JT Manager based on the transfer agreements.

The court of appeals affirmed the district court's dismissal of the complaint based on the releases, but on different grounds than the district court. *Hoskin v. Krsnak*, No. A23-1275, 2024 WL 2131674 (Minn. App. May 13, 2024). The court of appeals concluded that the district court erred by determining that Hoskin was required to return the consideration that he received to void the agreements. But the court of appeals nevertheless concluded that the releases in the transfer agreements bar Hoskin's claims. In reaching this conclusion, the court of appeals stated that Hoskin was required to allege facts in his complaint to invalidate the releases. Because the court of appeals determined that Hoskin's pleadings related to duress and fraud were insufficient to invalidate the releases, the court of appeals concluded that the releases bar Hoskin's claims. Given this conclusion, the court of appeals did not consider the district court's alternative grounds for dismissing five of Hoskin's ten claims. Finally, the court of appeals affirmed the award of costs and attorney fees to Krsnak and JT Manager as the prevailing parties.

Hoskin filed a petition for further review, which we granted.

## ANALYSIS

This appeal has evolved since we granted Hoskin's petition for further review. Hoskin's petition for further review asked us to consider several questions related to the

8

merits of Hoskin's claims.[2] But after the parties' initial briefing and before oral argument, we identified a threshold procedural question that the parties did not raise or brief: whether a plaintiff's complaint must include facts sufficient to rebut a potential affirmative defense. We requested supplemental briefing on this issue, and it is now the dispositive issue in this appeal.[3] We first consider whether a plaintiff's complaint must include facts that are sufficient to rebut a potential affirmative defense. We then assess whether Krsnak and JT Manager are the "prevailing party" (and therefore entitled to costs and attorney fees) at this time.

---

[2] Hoskin's petition for further review raised the following six issues for which we granted review: (1) whether "economic duress" is categorically excluded as a foundation of duress under Minnesota law; (2) whether "economic duress" is a factor to be considered when determining intent to release claims; (3) whether litigants must plead fraud as to each term of an agreement, rather than the agreement as a whole; (4) whether the appellant must anticipate the respondent's arguments and address those arguments in their opening brief; (5) whether a recent court of appeals case requires fraud claims to be dismissed if the aggrieved party discovered the fraudulent scheme; and (6) whether an allegation that a party lied to induce the execution of a contract states a claim of fraudulent inducement. Krsnak and JT Manager did not cross-petition on any issues. Because we resolve this appeal on other grounds, we do not consider the merits of the six issues raised in Hoskin's petition for further review.

[3] Ordinarily, " 'we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.' " *Schroeder v. Simon*, 985 N.W.2d 529, 558 (Minn. 2023) (Anderson, J., concurring) (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008)). But we also have a duty "to decide cases in accordance with law, and that responsibility is not to be diluted by counsel's oversights, lack of research, failure to specify issues or to cite relevant authorities." *State v. Hannuksela*, 452 N.W.2d 668, 673 n.7 (Minn. 1990) (citation omitted) (internal quotation marks omitted). Additionally, in this case, we identified counsels' failure to identify the relevant issues before oral argument, requested supplemental briefing on those issues, and focused on them during oral argument. Because we have an obligation to apply the correct law and the parties have had the opportunity to litigate the relevant issues in this case, we resolve this case on the supplemental issues and briefing.

I.

Hoskin asks us to consider whether his complaint should have been dismissed under Minnesota Rule of Civil Procedure 12.02(e), which permits dismissal for "failure to state a claim upon which relief can be granted." We review this question de novo. *Hansen v. U.S. Bank Nat'l Ass'n*, 934 N.W.2d 319, 325 (Minn. 2019). To resolve this question, we must determine whether the complaint sets forth "a legally sufficient claim for relief." *Abel v. Abbott Nw. Hosp.*, 947 N.W.2d 58, 68 (Minn. 2020). "A claim is sufficient against a motion to dismiss for failure to state a claim if it is possible on any evidence which might be produced, consistent with the pleader's theory, to grant the relief demanded." *Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 603 (Minn. 2014). This standard reflects "a preference for non-technical, broad-brush pleadings," and it has remained the same since we adopted notice pleading in 1951. *Id.* at 604–05.

The court of appeals concluded that Hoskin's complaint was properly dismissed because all his claims are barred by an affirmative defense (release) based on the releases in the transfer agreements. To reach this conclusion, the court of appeals reasoned that the releases were fatal to Hoskin's claims because the allegations in Hoskin's complaint do not state a claim for duress or fraud and therefore cannot invalidate the releases. Case law from this court arguably supports that approach. In *Zimmermann v. Benz*, 202 N.W. 272 (Minn. 1925), and *Wallner v. Schmitz*, 57 N.W.2d 821 (Minn. 1953), we addressed motions to dismiss based on an affirmative defense of release. In both cases, we affirmed the district courts' dismissal of the plaintiffs' claims where the plaintiffs had failed to allege facts supporting a claim of duress that would be sufficient to rebut the releases. In other

10

words, *Zimmermann* and *Wallner*—cases that we have never expressly overruled—suggest that a plaintiff must anticipate an affirmative defense and allege facts in their complaint sufficient to rebut that affirmative defense to survive a motion to dismiss based on that affirmative defense. *See Zimmermann*, 202 N.W. at 272–73; *Wallner*, 57 N.W.2d at 824.

But Hoskin correctly points out that our more recent case law suggests that a plaintiff is *not* required to anticipate and rebut an affirmative defense in their complaint. In *Hansen*, for example, we explained that when a party moves to dismiss a complaint based on an affirmative defense, dismissal is appropriate "only when it is clear from the stated allegations in the complaint" that the affirmative defense bars the complaint. *See* 934 N.W.2d at 326. *Hansen* does not suggest that a complaint must anticipate and rebut potential affirmative defenses.

Because the standards set out in cases such as *Zimmermann* and *Wallner* are inconsistent with the logic in *Hansen*, we must clarify the proper standard for reviewing a motion to dismiss when the motion is based upon an affirmative defense. Applying a de novo standard of review, we first clarify the legal standard and then apply that standard to the circumstances here. *See In re Polaris, Inc.*, 967 N.W.2d 397, 406 (Minn. 2021) ("Determining the appropriate legal standard is a question of law that we review de novo."); *Curtis v. Altria Grp., Inc.*, 813 N.W.2d 891, 898 (Minn. 2012) (explaining that we review de novo the application of the law).

## A.

For the reasons set out below, we conclude that the heightened burden set out in *Zimmermann* and *Wallner* is no longer applicable and that the standard set out in *Hansen*

11

applies when a motion to dismiss is based on an affirmative defense to the plaintiff's claims. We reach this conclusion by first considering the legal context in which *Zimmermann* and *Wallner* were decided and then assessing the practice in other jurisdictions.

*Zimmermann* and *Wallner* do not reflect our current notice-pleading standard because they were not decided under that standard. Instead, those cases were decided under our old code-pleading standard. *See Kelly v. Ellefson*, 712 N.W.2d 759, 767 (Minn. 2006) (explaining the shift from code pleading to notice pleading); *Zimmermann*, 202 N.W. at 272–74; *Wallner*, 57 N.W.2d at 824.[4] Code pleading was designed to discourage "fictitious pleading" by "requir[ing] truth in pleading." *Derby v. Gallup*, 5 Minn. 119, 131 (1860). To achieve that goal, code pleading required parties to plead facts sufficient to constitute a cause of action (for plaintiffs) or a defense (for defendants). *Id.*; *see also Kelly*, 712 N.W.2d at 767 (explaining that code pleading "required a complaint to include a specific statement of ultimate facts sufficient to constitute a cause of action"). The reasoning in *Zimmermann* and *Wallner* is consistent with the code-pleading standard.

We replaced code pleading with notice pleading when we adopted Minnesota Rule of Civil Procedure 8.01 in 1951, effective January 1, 1952. *Walsh*, 851 N.W.2d at 604–05; *Wallner*, 57 N.W.2d at 824 n.1. Under our notice-pleading standard, a complaint "sets forth a claim for relief" if it "contain[s] a short and plain statement of the claim showing

---

[4]     Although we decided *Wallner* in 1953, after we adopted our current notice-pleading standard, "the judgment appealed from was entered December 29, 1951," so "the Rules of Civil Procedure, effective January 1, 1952, [did] not apply." *Wallner*, 57 N.W.2d at 824 n.1. Accordingly, *Wallner* was a code-pleading case.

12

that the pleader is entitled to relief and a demand for judgment for the relief sought." Minn. R. Civ. P. 8.01.  This standard has remained the same since we adopted it.  *Walsh*, 851 N.W.2d at 604–05.  Unlike code pleading, notice pleading does not require a pleader "to allege facts and every element of a cause of action."  *N. States Power Co. v. Franklin*, 122 N.W.2d 26, 29 (Minn. 1963).  Instead, "a pleading will be dismissed only if it appears to a certainty that no facts, which could be introduced consistent with the pleading, exist which would support granting the relief demanded."  *Id.*

Because code pleading required much more specificity than notice pleading, the rules of law developed in code-pleading cases may not be consistent with later notice-pleading case law.  This is certainly true of *Zimmermann* and *Wallner*.  As discussed above, *Zimmermann* and *Wallner* place a burden on the plaintiff to anticipate and rebut an affirmative defense in their complaint to survive a motion to dismiss based on that affirmative defense.  *See Zimmermann*, 202 N.W. at 272–74; *Wallner*, 57 N.W.2d at 824.  But we have explained more recently that we will not dismiss a complaint " 'if it is *possible on any evidence which might be produced, consistent with the pleader's theory, to grant the relief demanded*.' "  *Walsh*, 851 N.W.2d at 602 (quoting *Franklin*, 122 N.W.2d at 29).  We have also explained that "the party asserting [an affirmative] defense has the burden of establishing each of the elements" of the defense.  *MacRae v. Grp. Health Plan, Inc.*, 753 N.W.2d 711, 716 (Minn. 2008).  By requiring a plaintiff to anticipate and rebut an affirmative defense to survive a motion to dismiss based on that affirmative defense, *Zimmermann* and *Wallner* create a heightened pleading standard that runs headlong into our broad notice-pleading standard and our more recent case law.  Instead of requiring a

"short and plain statement" to survive a motion to dismiss, as Rule 8.01 permits, *Zimmermann* and *Wallner* require a potentially long, complex statement with allegations that not only set forth the plaintiff's legal claims but also anticipate and rebut the defendant's affirmative defenses—defenses that the defendant may never choose to assert. Placing this heightened burden on a plaintiff at the pleading stage simply does not comport with the preference for "non-technical, broad-brush pleadings" embodied in Rule 8.01. *See Walsh*, 851 N.W.2d at 604.

By contrast, the approach adopted in more recent cases such as *MacRae* and *Hansen* fits well with our notice-pleading standard. In *MacRae*, we reversed a grant of summary judgment and dismissal of plaintiff's complaint based on a statute of limitations defense. 753 N.W.2d at 713–14. We began by noting that the statute of limitations is an affirmative defense and explained that "the party asserting [an affirmative] defense has the burden of establishing each of [its] elements." *Id.* at 716. Because the defendant had not established that the statute of limitations had run before the plaintiff filed her complaint, we reversed the dismissal of plaintiff's complaint and remanded to the district court. *Id.* at 723. *Hansen* applied a similar burden at the motion to dismiss stage. *Hansen*, 934 N.W.2d at 326. In *Hansen*, we explained that we "construe the complaint to allow the plaintiff's claim to go forward unless there is no way to construe the alleged facts—and the inferences drawn from those facts—in support of the plaintiff's claim." *Id.* Accordingly, we held that, when a party moves to dismiss a complaint based on an affirmative defense, dismissal is appropriate "only when it is clear from the stated allegations in the complaint" that the affirmative defense bars the complaint. *Id.* Under the standard articulated in *MacRae* and

14

*Hansen*, the plaintiff does not need to identify and rebut potential affirmative defenses in their complaint. Instead, the *defendant* must show that the allegations in the complaint establish each element of an affirmative defense to secure dismissal based on that defense. This standard ensures that a complaint will survive a motion to dismiss unless the complaint itself sets forth the elements of an unrebuttable affirmative defense, which aligns with our notice-pleading standard.

Although case law from other jurisdictions does not bind our court, we note that other courts have taken a similar approach. Federal courts, for instance, have explained that a court may dismiss a complaint based on an affirmative defense "only in the relatively rare circumstances when all facts necessary to the affirmative defense clearly appear on the face of the complaint." *L.N.P. v. Kijakazi*, 64 F.4th 577, 586 (4th Cir. 2023) (citation omitted) (internal quotation marks omitted); *see also* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (4th ed. 2025) (explaining that dismissal based on an affirmative defense is appropriate only when the "affirmative defense appears on the face of the complaint," such that the complaint "is essentially self-defeating").[5] And other notice-pleading states have also explained that a motion to dismiss based on an

---

[5]      *See also Luna Vanegas v. Signet Builders, Inc.*, 46 F.4th 636, 640 (7th Cir. 2022) ("Rarely will the face of the complaint so clearly prove the opponent's affirmative defense that immediate dismissal, prior to the filing of an answer, will be proper."); *Joyce v. Armstrong Teasdale, LLP*, 635 F.3d 364, 367 (8th Cir. 2011) ("As a general rule, the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense." (citation omitted) (internal quotation marks omitted)); *Jensen v. Brown*, 131 F.4th 677, 691 (9th Cir. 2025) ("[D]ismissal based on an affirmative defense is permitted [only] when *the complaint* establishes the defense." (citation omitted) (internal quotation marks omitted)).

15

affirmative defense may be granted only if "the facts [in the complaint] establish the defense." *See Shepherd v. Costco Wholesale Corp.*, 482 P.3d 390, 393 (Ariz. 2021).[6]

In keeping with this approach, other courts have similarly and consistently held that the plaintiff has no obligation to anticipate and rebut an affirmative defense in their complaint. For example, the United States Court of Appeals for the Seventh Circuit has explained that plaintiffs "ordinarily need not anticipate and attempt to plead around affirmative defenses." *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 566 (7th Cir. 2023) (citation omitted) (internal quotation marks omitted); *see also* Wright & Miller, *supra*, § 1357 ("[A] plaintiff is not required to plead the negation of an affirmative defense in order to survive a motion to dismiss."). The West Virginia Supreme Court of Appeals has likewise held that "a plaintiff's complaint need not anticipate or attempt to plead around potential defenses that may be raised by the defendant." *Gable v. Gable*, 858 S.E.2d 838, 850 (W. Va. 2021). And these jurisdictions are far from alone.[7] Under this legal standard,

---

[6]    *See also State ex rel. Nguyen v. Lawson*, 257 N.E.3d 157, 163 (Ohio 2025) ("[W]e have held that an affirmative defense may properly be raised in a motion to dismiss but only if the complaint and the materials incorporated into it show conclusively that the defense applies."); *Spann v. Davis*, 866 S.E.2d 371, 374 (Ga. 2021) ("[A]lthough the complaint need not anticipate affirmative defenses, if the allegations on the face of the pleadings support the defense as a matter of law and show that the claimant would not be entitled to relief, the trial court is authorized to dismiss for failure to state a claim.").

[7]    *See, e.g.*, *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1304 (11th Cir. 2020) ("A complaint need not anticipate and negate affirmative defenses and should not ordinarily be dismissed based on an affirmative defense unless the defense is apparent on the face of the complaint."); *Schmidt v. Skolas*, 770 F.3d 241, 248 (3d Cir. 2014) ("[A] complaint need not anticipate or overcome affirmative defenses . . . ."); *Harris v. City of New York*, 186 F.3d 243, 251 (2d Cir. 1999) (explaining that a plaintiff need not anticipate an affirmative defense in their complaint); *Schultea v. Wood*, 47 F.3d 1427, 1430

16

"[t]he mere presence of a potential affirmative defense does not render the claim for relief invalid." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016) (alteration in original) (citation omitted) (internal quotation marks omitted). Instead, "[o]nly when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed" for failure to state a claim. *Jensen v. Brown*, 131 F.4th 677, 691 (9th Cir. 2025) (citation omitted) (internal quotation marks omitted).

The logic of the federal courts and other states comports with our own case law and Minnesota Rules of Civil Procedure 8.01 and 12.02. Under Minnesota law, a plaintiff need not anticipate and rebut an affirmative defense in their complaint to survive a motion to dismiss based on that defense.[8] We therefore hold that a motion to dismiss based on an

---

(5th Cir. 1995) (same); *Killoran v. Kaler*, 18 N.W.3d 867, 880 (N.D. 2025) ("A complaint does not need to allege facts in anticipation of an affirmative defense."); *Shepherd*, 482 P.3d at 393 (explaining that a complaint does not need to anticipate an affirmative defense).

[8] We note that the federal pleading standard differs from Minnesota's pleading standard. In two seminal cases, the United States Supreme Court "articulated a heightened pleading standard under the Federal Rules of Civil Procedure." *Demskie v. U.S. Bank Nat'l Ass'n*, 7 N.W.3d 382, 387 (Minn. 2024) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). Under this heightened standard, a complaint must contain facts sufficient to state a *plausible* claim for relief. *Twombly*, 550 U.S. at 556; *Iqbal*, 556 U.S. at 678. In *Walsh*, we explained that the heightened standard does not apply in Minnesota because our rules reflect "a preference for non-technical, broad-brush pleadings" that merely put the opposing party on notice of the claims against it. 851 N.W.2d at 604; *see also* Minn. R. Civ. P. 8.01. In other words, a plaintiff faces a *lower* burden to state a claim for relief and survive a motion to dismiss in Minnesota state court than they would in federal court.

Applying our outdated case law from the code-pleading era, *see Zimmermann*, 202 N.W. 272; *Wallner*, 57 N.W.2d 821, would hold Hoskin to a *higher* standard than he

17

affirmative defense may be granted only if the allegations in the complaint, construed in the plaintiff's favor, establish an unrebuttable defense. *See Hansen*, 934 N.W.2d at 326–27. To the extent that *Zimmermann* and *Wallner* conflict with this standard, we overrule them.

B.

Having clarified the legal standard that applies when reviewing a motion to dismiss based on an affirmative defense, we next apply that standard to the circumstances presented in this case.

As discussed above, Krsnak and JT Manager moved to dismiss Hoskin's complaint based on the releases in the transfer agreements. In doing so, Krsnak and JT Manager filed a motion to dismiss based on an affirmative defense. *See* Minn. R. Civ. P. 8.03 (identifying "release" as an affirmative defense); *Karnes v. Quality Pork Processors*, 532 N.W.2d 560, 563 (Minn. 1995) ("A release is an affirmative defense to a cause of action . . . ."). The district court dismissed Hoskin's complaint based on the releases, and the court of appeals affirmed the dismissal based on its conclusion that Hoskin did not plead facts in his complaint sufficient to state a claim for duress or either type of fraud. *Hoskin*, 2024 WL 2131674, at *4–5, *10–12.

Put simply, the question before us is whether Hoskin pleaded himself out of court. Dismissal of Hoskin's complaint based on the releases in the transfer agreements is

---

would face in federal court. This result would be inconsistent with our broad notice-pleading standard, and it provides further support for our conclusion that *Zimmermann* and *Wallner* are no longer good law in this context.

18

appropriate only if the allegations in the complaint and the documents referenced in the complaint, construed in Hoskin's favor, establish an unrebuttable affirmative defense. *Hansen*, 934 N.W.2d at 326–27. In other words, for Hoskin's complaint to be dismissed at this stage, its allegations must admit all the elements of an unrebuttable defense such that his claims cannot survive as a matter of law. *Id.*

Based on the allegations in the complaint and the transfer agreements, which are referenced in the complaint, Hoskin has not pleaded himself into an unrebuttable affirmative defense. Krsnak and JT Manager are correct that the allegations in Hoskin's complaint establish that the releases exist. The complaint refers to the transfer agreements, which include the releases, and courts "may consider documents referenced in a complaint without converting the motion to dismiss to one for summary judgment." *N. States Power Co. v. Minn. Metro. Council*, 684 N.W.2d 485, 490 (Minn. 2004) (emphasis omitted).

Although we may consider the releases, their mere existence is insufficient to bar Hoskin's complaint. "[A] release is an affirmative defense to a plaintiff's claim for relief, not something the plaintiff must anticipate and negate in [their] pleading." *Perry v. Merit Sys. Prot. Bd.*, 582 U.S. 420, 435 n.9 (2017). Accordingly, for the releases to bar Hoskin's complaint, the allegations in the complaint must establish that the releases are valid. But the allegations in Hoskin's complaint do not go so far. Hoskin's complaint does not concede that the releases were executed voluntarily. To the contrary—Hoskin's complaint is predicated on the allegation that he executed the transfer agreements (and therefore the releases) *involuntarily*. Because the allegations in Hoskin's complaint do not admit all the

elements of an unrebuttable defense by merely admitting the existence of the releases, the releases do not bar Hoskin's claims at this early stage of litigation.

To illustrate why the releases do not and should not bar Hoskin's complaint, we consider Hoskin's assertion that he executed the transfer agreements and, by extension, the releases under duress. We have explained that "[d]uress is available as a defense to a contract only when agreement is coerced by physical force or unlawful threats." *Bond v. Charlson*, 374 N.W.2d 423, 428 (Minn. 1985). For physical force or an unlawful threat to constitute duress, it must "destroy[] the victim's free will and compel[] him to comply with some demand of the party exerting the coercion." *Wise v. Midtown Motors*, 42 N.W.2d 404, 407 (Minn. 1950). A party's ability to resist coercive acts is subjective—"that is, the existence of duress is to be determined by whether the coercion was of such a character as to overcome the free will of the victim rather than that of a person of ordinary courage and firmness." *Id.* Put differently, we focus on "the state of mind induced thereby in the victim," not on the nature of the coercion, when determining whether a party executed a contract under duress. *Id.*

Hoskin appears to argue that Krsnak coerced him into executing the transfer agreements, and the releases upon which Krsnak relies, through an "unlawful threat." We have never defined the term "unlawful threat." Instead, we have conducted fact-specific analyses to determine whether the circumstances surrounding the execution of a given agreement were coercive enough to overcome the complainant's free will. *See id.* at 408–09 (holding that certain economic threats against the plaintiff established duress); *Snyder v. Samuelson*, 167 N.W. 287, 288 (Minn. 1918) (same); *Bond*, 374 N.W.2d at 428

20

(holding that certain economic threats against the plaintiff were insufficient to establish duress). In doing so, we have considered the circumstances as a whole and from the perspective of the complainant. Accordingly, we have never held that "economic duress" cannot constitute an "unlawful threat." Given our duress case law, the allegations in Hoskin's complaint—viewed in the light most favorable to Hoskin—do not categorically prohibit him from establishing duress as a defense to the affirmative defense of release.[9]

In sum, Hoskin was not required to anticipate and rebut Krsnak and JT Manager's affirmative defense of release in his complaint, and the allegations in the complaint do not establish that the releases necessarily bar his claims here.[10] For these reasons, we reverse and remand to the court of appeals so that it may consider whether the district court erred by dismissing five of Hoskin's ten claims on the merits.[11] *See Bahr v. Boise Cascade*

---

[9] Because we conclude that the allegations in Hoskin's complaint do not prohibit him from asserting and potentially establishing duress as a defense to the affirmative defense of release, we decline to consider whether the allegations in Hoskin's complaint preclude him from asserting and possibly establishing fraudulent misrepresentation and fraudulent nondisclosure as defenses to the releases.

[10] To be clear, our decision here is based on the lenient pleading standards that apply at the motion to dismiss stage. We express no view on the ultimate merits of Krsnak and JT Manager's affirmative defense based on release or on Hoskin's defenses to that affirmative defense.

[11] We have no need to address the conclusion of the court of appeals that the district court erred in dismissing the entire complaint "when it concluded that Hoskin was required to return the consideration before repudiating the releases." *Hoskin*, 2024 WL 2131674, at *10. Krsnak and JT Manager did not request cross-review on that issue. In any event, the district court's reasoning—that "Hoskin does not allege he has or has attempted to return any amount of the consideration received for signing the Transfer Agreements"—fails for the same reasons already stated: Hoskin was not required to anticipate and rebut the affirmative defense, and the allegations in Hoskin's complaint do not establish that the releases necessarily bar his claims.

21

*Corp.*, 766 N.W.2d 910, 922 (Minn. 2009) (reversing and remanding to the court of appeals to consider issues that it did not initially address).

II.

Hoskin also challenges the decision of the court of appeals to affirm the district court's award of costs and attorney fees to Krsnak and JT Manager based on the attorney fees provisions in the transfer agreements. Hoskin did not raise this challenge in his petition for further review, and "[g]enerally, we do not address issues that were not raised in a petition for [further] review." *In re GlaxoSmithKline PLC*, 699 N.W.2d 749, 757 (Minn. 2005). But we may address such issues in the interests of justice, and we choose to do so here. *See* Minn. R. Civ. App. P. 103.04 ("The appellate courts may reverse, affirm or modify the judgment or order appealed from or take any other action as the interest of justice may require."). Because Krsnak and JT Manager cannot properly be considered the "prevailing party" given our decision here, we reverse the award of costs and attorney fees to them. But we express no opinion on the merits of Hoskin's arguments regarding the lower courts' interpretation and application of the attorney fees provisions in the transfer agreements.

**CONCLUSION**

For the foregoing reasons, we reverse the decision of the court of appeals and remand to the court of appeals for further proceedings consistent with this opinion.

Reversed and remanded.

GAÏTAS, J., took no part in the decision of this case.